## FREDERICK ARBOUR *v.* J. A. NETTLES et al.

A sale of a preëmption right acquired under the Act of Congress of 1841, made prior to the issuing of a patent, is null and void.

The distinction between a transfer of the right of preëmption and a transfer of the occupancy and improvement upon which the right of preëmption is based, commented on, and declared not applicable to this case.

APPEAL from the District Court of East Baton Rouge, *Robertson*, J. *R. G. Beale*, for plaintiff and appellant. *A. M. Dunn*, for defendants.

BUCHANAN, J. This is a suit upon three notes, amounting to twelve hundred dollars, given for the price of a preëmption right and Register's certificate thereto, of a tract of public land containing one hundred and forty-seven and sixty-eight one-hundreths acres, and all the improvements thereon. In the act of sale, dated April 3d, 1854, it was covenanted that the vendor should continue in the uninterrupted possession of the tract of land until the 1st of January, 1855.

The defence to the action rests upon two grounds :

1st. That the payee of the notes sued on (the vendor of the preëmption right, &c.) violated his covenant, by moving from and vacating the premises sold, before the 1st of January, 1855 ; in consequence of which abandonment, the dwelling house, the only improvement of any value, was neglected and

28

was consumed by fire; and by such removal the said vendor lost all right of preëmption as an actual settler, in and to the land described in the act of sale.

2d. That the Act of Congress conferring the right of preëmption upon actual settlers on the public lands, forbids the settler to sell or transfer, or assign the right of preëmption, and declares all such transfers null and void.

The Act of Congress of 1841, chapter 16, entitled an Act to appropriate the proceeds of the sales of the public lands and to grant preëmption rights, section 12, declares: "That prior to any entries being made under and by virtue of the provisions of this Act, proof of the settlement and improvement thereby required, shall be made to the satisfaction of the Register and Receiver of the land district in which such lands may lie, agreeably to such rules as shall be prescribed by the Secretary of the Treasury, who shall each be entitled to receive fifty cents from each applicant, for his services to be rendered as aforesaid; and all assignments and transfers of the right hereby secured, prior to the issuing of the patent, shall be null and void."

The contract which was the cause or consideration of the notes sued upon, is upon its face unlawful, so far as it imports a sale of a preëmption right to public land, and of a Register's certificate of such right. An obligation with an unlawful cause, can have no effect. Civil Code, Art. 1887. The vendor, *Eames*, might himself have treated the sale as a nullity. *Poirier* v. *White*, 2 An. 934.

But the counsel of plaintiff contends that the sale of *the improvements on the land* is not liable to that objection, and constitutes a valid consideration for the notes.

It was held by our predecessors in the case of *Jenkins* v. *Gibson*, 3 An. 203; *Wood* v. *Lyle*, 4 An. 145; *Hollon* v. *Snapp*, 4 An. 519; *Price* v. *Curran*, 5 An. 686; *Norman* v. *Ellis*, 5 An. 694; and *Bryan* v. *Glass*, 6 An. 740—that the sale of improvements on the public lands of the United States was a valid consideration of a note, provided both the vendor and the vendee were in a situation to claim the right of preëmption under the Act of Congress. And in the case of *Price* v. *Curran*, the court established a presumption, in the absence of contrary proof, that the contracting parties possessed the conditions required by the statute for preëmptors. Perhaps, after so many decisions, this doctrine of the transferability of the actual occupancy and improvement of the public domain, with a view to its subsequent acquisition by preëmption, must be viewed as too firmly settled to be disturbed; although, if it were a new question, we should hesitate much before adopting it, in the face of the very plain and positive enactment confining the right of preëmption to the identical party who has made the improvement. The tenth section of the Act already quoted, declares:

"That from and after the passage of this Act, every person being the head of a family, or widow, or single man over the age of twenty-one years, and being a citizen of the United States, or having filed his declaration to become a citizen, as required by the naturalization laws, who, since the first day of June, A. D. 1840, has made or shall hereafter make a settlement in person on the public lands to which the Indian title had been at the time of such settlement extinguished, and which has been, or shall have been, surveyed prior thereto, and who shall inhabit and improve the same, and who has or shall errect a dwelling thereon, shall be, and is hereby, authorized to enter with the Register of the land district in which such land may lie, by legal subdivisions, any

number of acres not exceeding one hundred and sixty, or a quarter section of land, to include the residence of such claimant, upon paying to the United States the minimum price of said land, subject, however, to the following limitations and exceptions," &c.

The distinction between a transfer of the right of preëmption and a transfer of the occupancy and improvemement upon which the right of preëmption is based, is in fact not at all obvious. But accepting the doctrine, such as our predecessors have handed it down to us, it is clearly not applicable to the present case. For here we have not a sale of the improvement alone, but a sale of the preëmption right and the improvement. And the reason given in *Bryan* v. *Glass*, namely, "that the court had reason to believe defendant intended to purchase the right of occupancy, with a view to acquire the land by preëmption, upon his own possession," cannot apply here; for *Eames* sells, along with the right of preëmption and the improvement, "the certificate of the Register" that he had made the proof required by the twelfth ·section of the Act of Congress, and " delivers the certificate and plat of said land to the purchaser." Again, there is one price (twelve hundred dollars) given for the preëmption right, the certificate and the improvement, collectively; and the value of the improvement is proved to have been trifling in proportion to the whole price stipulated in the act of sale. In all the cases cited above, the sale was a sale of the improvements alone. Lastly, the proof sustains the allegation of the answer, that the vendor abandoned the land in violation of his agreement contained in the act of sale, in August 1854, and that the house, the only improvement of value, worth from a hundred to a hundred and fifty dollars, was consumed by fire in November or December, 1854; at which time the vendor ought, by his contract, to have been occupying it. So far, then, as the improvements were concerned, there was an entire failure of consideration, by the fault of the vendor.

Judgment affirmed, with costs.